IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT WELLS,

        **Plaintiff,**

vs.                                   Civ. No.  16-039 JH/CG

TRAX INTERNATIONAL, LLC, and
INTERNATIONAL ASSOCATION OF
MACHINISTS AND AEROSPACE
WORKERS, LOCAL LODGE 2515,

        **Defendants.**


## MEMORANDUM OPINION AND ORDER

Plaintiff has sued both his former employer and his union after he was laid off from his job and not rehired. This matter is before the Court on motions to dismiss for failure to state a claim by each of the Defendants in this case: (1) *Defendant IAMAW, Local Lodge 2515's Motion to Dismiss* [Doc. 4], and (2) *Defendant Trax International, LLC's Partial Motion to Dismiss for Failure to State a Claim* [Doc. 9]. The Defendants argue that federal labor laws preempt Plaintiff's state-law claims in this case, and that those claims should be dismissed as untimely. After reviewing the motion and the response, the Court concludes that both motions should be granted.

## FACTS ALLEGED IN THE AMENDED COMPLAINT

On January 17, 2016, Plaintiff filed his original Complaint [Doc. 1] in this case, and on January 25, 2016, he filed his Amended Complaint. Plaintiff makes the following allegations in his Amended Complaint [Doc. 3], which the Court accepts as true for the purpose of ruling on the motions to dismiss.

Defendants International Association of Machinists and Aerospace Workers, Local Lodge 2515 ("IAMAW") and Trax International, LLC ("Trax"), are domestic corporations doing business in New Mexico and are parties to a collective bargaining agreement ("CBA"). Am. Compl. ¶¶ 5-6, 11. Plaintiff Robert Wells is a seventy-three-year-old resident of New Mexico with fifty years of experience as an electronic technician. *Id.* at ¶¶ 4, 10.

Mr. Wells began working as an electronic technician in Trax's timing division in January 2008 and elected to join the IAMAW after completing a ninety-day probationary period in his position. *Id.* ¶¶ 7, 9. On June 14, 2011, five of the timing division's seven employees, including Mr. Wells, were laid off from their employment with Trax. *Id.* ¶ 11-13. Mr. Wells was the oldest employee in the timing division at the time he was discharged. *Id.* ¶ 12.

Mr. Wells alleges that by the terms of the CBA between Trax and the IAMAW, laid-off employees like Mr. Wells "[were] supposed to be put on a recall list [in order of] seniority, and no jobs should have been posted for hire outside of the recall list until all employees on the recall list were recalled." *Id.* ¶ 11.[1] In accordance with these terms, Trax eventually rehired three of the five laid-off workers to different positions and accepted the voluntary resignation of a fourth. *Id.* ¶¶ 14-15. Although he had more seniority than all but one of the rehired employees, Trax did not recall Mr. Wells. *Id.* ¶¶ 16-17. All the employees rehired by Trax were younger than Mr. Wells. *Id.* at ¶ 17.

Notwithstanding the CBA's recall list provision, Trax began to advertise several electronic technician positions for which Mr. Wells would have qualified, actions that Mr. Wells alleges were "in direct violation of the CBA.". *Id.* ¶ 18. Mr. Wells applied to nearly sixty of these

---

[1] Trax disputes Mr. Wells' characterization of the terms of the CBA and points out that when ruling on a motion to dismiss a claim for breach of contract, a district court may consider the contract at issue. While this is a true statement, the Court does not find it necessary in this instance.

advertised positions between July 2011 and July 2015. *Id.* ¶ 19. Mr. Wells' efforts to reclaim his employment were burdened because Trax "intentionally moved electronic technician positions within its company and renamed the positions in an attempt to make it appear as if these positions were outside of the CBA and to avoid recalling [him]." *Id.* ¶ 20. Thus, despite his interest in returning to work, Trax repeatedly denied Mr. Wells a position at a time when Trax "continued to seek other applicants with [Mr. Wells's] qualifications, or less, who [were] younger than Mr. Wells." *Id.* ¶ 26.

In December 2011, Mr. Wells "learned about . . . Trax's breach of the CBA by hiring employees within the recall period who were not protected by the CBA." *Id.* ¶ 27. Mr. Wells "immediately" brought Trax's conduct to the IAMAW's attention and thereafter engaged in "several conversations with . . . [the] IAMAW's Chief Steward and Directing Business Representative" on the topic. *Id.* ¶¶ 28, 30. Although Mr. Wells alleges that the IAMAW "was required to file a grievance on Mr. Well's behalf in a timely fashion," it "failed to file a grievance on Mr. Wells's behalf within the timeframe provided in the CBA." *Id.* ¶¶ 29-30. Consequently, "Mr. Wells lost his ability to be heard on . . . Trax's failure to rehire him [or] to participate in the arbitration process provided in the CBA." *Id.* ¶ 30.

Mr. Wells asserts four claims against his former employer, Trax: violation of the Age Discrimination in Employment Act in failing to rehire him (Count I), retaliating against him in violation of the Age Discrimination in Employment Act (Count II), breach of contract by failing to adhere to the CBA (Count III), and breach of the covenant of good faith and fair dealing (Count IV). Mr. Wells asserts two claims against the IAMAW: violation of the duty of fair dealing (Count V), and breach of the duty of fair representation (Count VI).

**LEGAL STANDARD**

To survive a motion to dismiss, a complaint must present factual allegations that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); Fed. R. Civ. P. 8(a), 12(b)(6). The allegations must be enough that, if assumed to be true, the plaintiff plausibly, not merely speculatively, has a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support her claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) overruled on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). In ruling on a motion to dismiss for failure to state a claim, the court assumes as true all well-pleaded facts, as distinguished from conclusory allegations, and views those facts in the light most favorable to plaintiff. *See Shero v. City of Grove, Okla*., 510 F.3d 1196, 1200 (10th Cir. 2007); *Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

**DISCUSSION**

**I.      APPLICABLE FEDERAL LAW**

   **A.      Preemption**

Preemption involves competing state and federal interests. The "complete pre-emption doctrine" provides that "if a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law," *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24 (1983). Section 301 of the Labor Management Relations Act ("LMRA") is just such a federal

cause of action. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393-94 (1987). Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has held that § 301 authorizes federal courts "to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). As a result, "[a] state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law." *Id.* at 210. Therefore, § 301 preempts "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, ... whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Saunders v. Amoco Pipeline Co.*, 927 F.2d 1154, 1155 (10th Cir. 1991) (quoting *Allis-Chalmers Corp.*, 471 U.S. at 210-11) (further citations omitted).

The Court has made it clear, however, that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Id.* at 211. Indeed, preemption arises only when an "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213 (emphasis added). "[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988). Consequently, this Court must evaluate each of Mr. Wells' claims to determine whether they are

"inextricably intertwined" with existing provisions of the CBA and, as a result, preempted by § 301 of the LMRA.

**B.**     **"Hybrid" Claims and Statute of Limitations**

It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement. *Smith v. Evening News Ass'n*, 371 U.S. 195, 200-01 (1962). Before doing so, however, he must attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965). On the other hand, if the union representing the employee in the grievance/arbitration procedure acts in a discriminatory, dishonest, arbitrary, or perfunctory fashion such that it breaches its duty of fair representation, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. *Vaca v. Sipes*, 386 U.S. 171, 185-87 (1967); *Hines v. Anchor Motor Freight*, 424 U.S. 554 (1976). "The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). The Supreme Court has described such claims as "inextricably interdependent." *Id*. "To prevail against either the company or the Union, [the employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *Id*. at 165 (internal citations and quotations omitted). In this case, Mr. Wells asserts precisely the type of

hybrid claims against his employer and his union as described by the Supreme Court in *DelCostello*.

The Supreme Court held that such hybrid claims are governed by the six-month limitations period of § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *Id.* at 155, 172. The Tenth Circuit has held that if a union "rejects or abandons the claims of an aggrieved employee at some point in the grievance process," the six-month limitation period begins to run "when the employee knows or, through the exercise of reasonable diligence, should have known of that union's decision or action." *Lucas v. Mountain States Tel. & Telegraph*, 909 F.2d 419, 421 (10th Cir. 1990); *see also Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir. 1986) ("The cause of action accrues [in hybrid suit] from the time ... the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance."). However, "when a union represents an employee throughout a grievance procedure, a claim challenging the adequacy of that union's representation normally does not accrue until the dispute resolution process has been completely exhausted." *Lucas*, 909 F.2d at 421.

## II.    STATE LAW CLAIMS AGAINST TRAX

Trax moves to dismiss Mr. Wells' claims for breach of contract (Count III) and breach of the implied covenant of good faith and fair dealing (Count IV) on the grounds that those claims are preempted by the LMRA. Trax reasons that these claims are based on the CBA and their adjudication will require interpretation of the CBA. Mr. Wells does not dispute that these two claims rely upon the analysis of the CBA and are therefore preempted by Section 301. Instead, he argues that instead of dismissing his state law claims, the Court should treat them as claims brought under Section 301 of the LMRA. In the alternative, Mr. Wells seeks leave to amend his

complaint to assert these claims under the LMRA. In its reply, Trax agrees that the Court should treat Plaintiffs' state law claims as federal claims under Section 301, but argues that even so the claims should be dismissed because they are untimely under the six-month statute of limitations period established in *DelCostello*. The Court agrees, concluding that the claims are untimely and amendment would be futile.

Mr. Wells argues that the IAMAW violated its duties of fair dealing and fair representation by failing to file a grievance on his behalf. *See* Doc. 3 at ¶¶ 30, 58, 60, 63. Thus, under *Lucas*, the six-month statute of limitations period began to run when Mr. Wells knew or, through the exercise of reasonable diligence, should have known of the union's decision or action. 909 F.2d at 421. According to the allegations of the Amended Complaint, in December of 2011 Mr. Wells learned of Trax's alleged breach of the CBA and brought the issue to the attention of the IAMAW "immediately during that same time frame." Doc. 3 at ¶¶ 27-28. Then, in October of 2014, Mr. Wells learned that IAMAW "failed to file a grievance on Mr. Wells' behalf within the timeframe provided in the CBA." *Id*. at ¶ 30. Giving Mr. Wells the benefit of the doubt and assuming that this took place on October 31, 2014, the limitations period expired six months later on May 1, 2015. However, Mr. Wells did not file his complaint in this case until January 17, 2016, far outside the limitations period.

As a result, Mr. Wells' claims against Trax for breach of contract and breach of the covenant of good faith and fair dealing in Counts III and IV of the Amended Complaint will be dismissed as untimely. Mr. Wells' claims against Trax under the ADEA in Counts I and II remain pending.

### III.    CLAIMS AGAINST IAMAW

As explained above, Mr. Wells' claims in Counts V and VI that IAMAW violated its duties of fair dealing and fair representation are hybrid claims that are preempted by the LMRA. Mr. Wells argues in his response [Doc. 12 at 3-5] that his claims should be analyzed under state law, but the Court is not persuaded. A determination of whether or not IAMAW violated its duties of fair dealing and fair representation will necessarily require an analysis of the terms of the CBA in question, as it is that CBA that spells out the duties of the union. Accordingly, both of Mr. Wells' claims against IAMAW are preempted by federal law.

And, as with Mr. Wells' claims against Trax, his claims against IAMAW are untimely. Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), required Mr. Wells to have filed his claims within six months of when he knew or, through the exercise of reasonable diligence, should have known of the union's unlawful decision or action. By his own allegations in the Amended Complaint, that occurred at the latest in October of 2014, when Mr. Wells learned that IAMAW "failed to file a grievance on Mr. Wells' behalf within the timeframe provided in the CBA." Doc. 3 at ¶ 30. Thus, at the absolute latest, Mr. Wells' complaint should have been filed no later than April 1, 2015.

Realizing that his claims are untimely under this standard, Mr. Wells argues that the Court should apply the doctrine of equitable tolling to extend the time for filing his claims. He argues that "[b]ecause [Mr. Wells] reasonably relied on Defendant IAMAW to represent his legal interests and his interests under the CBA, the time in which he needed to file his complaint should be tolled until he learned that it was possible to assert legal claims against IAMAW." Doc. 12 at 5. In an affidavit attached to his response brief, Mr. Wells acknowledges that "[a]t some point in October of 2014, [he] learned  that a grievance was filed on [sic] behalf, but not in

a timely manner, so my rehire rights had been lost due to IAMAW's oversight." Doc. 12-1 at ¶ 9. Mr. Wells further avers that he relied on the union to inform him of all of his legal rights, and that its representatives "never once explained to [him] that [he] had potential claims against them for their failure to file a timely grievance." Doc. 12-1 at ¶ 11. He further states that it was not until July 17, 2015, when he consulted his attorney, that he discovered that "it was even possible" for him to assert a claim against IAMAW. Mr. Wells filed his original complaint on January 17, 2016, exactly six months to the day after that alleged meeting with his attorney.

"Generally, equitable tolling requires a litigant to establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quotations omitted). Mr. Wells seems to suggest that the extraordinary circumstance in this case is IAMAW's failure to affirmatively tell him that he could sue the union for its failure to properly represent him. He does not contend that the IAMAW actively discouraged him from asserting his rights, or misled him into believing that he could not sue the union. He also does not aver that union representatives told him that they had filed a grievance when in fact they had not done so. In short, nothing in the record suggests that the IAMAW fraudulently concealed any facts that Mr. Wells would need to know that he had a claim against the IAMAW. That Mr. Wells failed to seek out legal advice until well after his claims had expired does not constitute an "extraordinary circumstance," and it certainly weighs against a finding that he pursued his rights diligently. Accordingly, the Court declines to apply equitable tolling in this case. Mr. Wells' claims are untimely and will be dismissed as such.

**IT IS THEREFORE ORDERED** that:

(1)    *Defendant IAMAW, Local Lodge 2515's Motion to Dismiss* [Doc. 4] is **GRANTED**, and Plaintiff's claims against this Defendant in Counts V and VI of the Amended Complaint are **DISMISSED WITH PREJUDICE**;

(2)    *Defendant Trax International, LLC's Partial Motion to Dismiss for Failure to State a Claim* [Doc. 9] is **GRANTED**, and Plaintiff's claims against this Defendant in Counts III and IV of the Amended Complaint are **DISMISSED WITH PREJUDICE**; and

(3)    Plaintiff's claims against Defendant Trax International, LLC in Counts I and II of the Amended Complaint remain pending.


_____
**UNITED STATES DISTRICT JUDGE**